UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY BRAUN, | ) | |
| | ) | No. 22 CV 1223 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) ) | |
| | ) | December 16, 2022 |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Before the court is Plaintiff Tammy Braun's motion for leave to take limited discovery in this action to recover long-term disability ("LTD") benefits under the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. Defendant Unum Life Insurance Company of America ("Unum") opposes the motion. For the following reasons, Plaintiff's motion is granted:

**Background**

Plaintiff worked as a legal administrative assistant at a law firm until January 2021 when she stopped working because she suffers from hypophosphatemia, osteoarthritis, and bilateral carpal tunnel syndrome. (R. 1, Compl. ¶¶ 13-15.) Plaintiff filed a claim with Unum for LTD benefits under her employee welfare benefit plan ("Plan"). (Id. ¶ 16.) Unum denied the claim, and Plaintiff appealed the decision. (Id. ¶¶ 16-17.) On appeal Unum assigned one of its employees, Dr. Scott Norris, to review Plaintiff's claim. (Id. ¶ 18.) Dr. Norris concluded that Plaintiff's impairments did not preclude her from performing her

sedentary job as a legal administrative assistant, and so Unum again denied Plaintiff's claim on appeal. (Id.) Plaintiff disagrees with Dr. Norris's findings and claims they were "the product of biased claims handling" stemming from Unum's position as both the Plan's insurer and its claims administrator. (R. 1, Pl.'s Compl. ¶ 23.) Plaintiff now seeks to depose Dr. Norris regarding his alleged conflict of interest and bias in reviewing her claim.

## Analysis

The parties agree that the Plan affords Unum discretion in reaching its judgment on Plaintiff's claim for LTD benefits. (R. 24, Pl.'s Mem. at 2; R. 28, Def.'s Resp. at 7.) As a result, Unum's denial of Plaintiff's claim for ERISA benefits is subject to the arbitrary and capricious standard of review, and will be affirmed so long as:

> (1) it is possible to offer a reasoned explanation, based on the evidence, for [the] outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.

*Tompkins v. Cent. Laborers' Pension Fund*, 712 F.3d 995, 999-1000 (7th Cir. 2013). In such a case, the court "generally do[es] not look to any evidence beyond what the administrator considered." *Dorris v. Unum Life Ins. Co.*, 949 F.3d 297, 304 (7th Cir. 2020). That said, in *Semien v. Life Insurance Company of North America*, 436 F.3d 805, 815 (7th Cir. 2006), the Seventh Circuit held that limited discovery is appropriate in certain "exceptional cases" where an ERISA claimant "makes specific factual allegations of misconduct or bias in a plan administrator's review

procedures." To seek such limited discovery, a claimant must: (1) identify "a specific conflict of interest or instance of misconduct"; and (2) show "good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Id.*

After the Seventh Circuit announced the *Semien* standard, the Supreme Court in *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 108 (2008), held that a plan administrator's "dual role" of determining eligibility for benefits and paying benefits "creates a conflict of interest" that should be considered in determining whether the plan administrator abused its discretion in denying benefits. In light of *Glenn*, the Seventh Circuit "soften[ed]" the *Semien* standard, such that district courts "retain broad discretion to limit and manage discovery" where "the likelihood and gravity of a conflict of interest might require discovery to 'identify a specific conflict of interest or instance of misconduct.'" *Dennison v. MONY Life Ret. Income Sec. Plan for Emps.*, 710 F.3d 741, 747 (7th Cir. 2013) (finding that *Glenn* "implies a role for discovery in judicial review of benefits determinations when a conflict of interest is alleged"). Thus, rather than requiring identification of a specific conflict of interest as "a prerequisite to discovery," discovery may be permitted "to explore a conflict." *Id.* However, the claimant must still show more than a "thinly based suspicion" to justify such discovery. *Id.* at 746.

Here, Plaintiff seeks to depose Dr. Norris so that she may discover information relating to his alleged conflict of interest and bias in handling her claim. (R. 24, Pl.'s Mem.) Plaintiff argues that a structural conflict exists because

3

Unum decides eligibility and pays disability benefits. (Id. at 6-7); *see also Glenn*, 554 U.S. at 108. Under this structure, medical professionals such as Dr. Norris receive fees from an insurer such as Unum that has "an interest in receiving a report that minimizes, or discounts, a disability claim." *Jenkins v. Price Waterhouse LTD Plan*, 564 F.3d 856, 859 n.5 (7th Cir. 2009); *see also Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 904 (9th Cir. 2016) ("[I]t is not hard to imagine an . . . examiner who does not engage in a neutral, independent review, such as where the examiner receives hundreds of thousands of dollars from a single [insurer] and performs hundreds of reviews for that source every year."). Unum responds that "[s]tructural conflicts are ubiquitous," and simply pointing to one is not enough to establish an "exceptional circumstance" warranting limited discovery. (R. 28, Def.'s Resp. at 7.) Unum also points out that Plaintiff must still satisfy the *Semien* standard and argues that Plaintiff has failed to do so here. (Id. at 8-11.)

Under *Semien* Plaintiff must first identify a specific conflict of interest or instance of misconduct by Unum. Plaintiff says she satisfies this requirement because Unum engaged in "a documented 'history of biased claims administration'" involving Dr. Norris. (R. 24, Pl.'s Mem. at 5 (quoting *Glenn*, 554 U.S. at 117).) To demonstrate Dr. Norris's alleged bias, Plaintiff points to a string of cases revealing what she describes as Dr. Norris's "flawed pattern of assessment," including lack of expertise, mischaracterization of evidence, and refusal to consider contradictory evidence. (Id. at 7-10.)

4

For starters, Plaintiff cites a handful of cases from this year finding Dr. Norris's conclusions inconsistent with the objective evidence. (Id. at 7-8.) In *Carney v. Unum Life Insurance Company*, ___ F. Supp. 3d ___, 2022 WL 988360, at *8, *10-11 (E.D. Mich. March 31, 2022), the court deemed "unpersuasive" Dr. Norris's findings, which were based solely on "file reviews" and not "wholly supported by the record." Similarly, in *Chicco v. First Unum Life Insurance Company*, No. 20 CV 10593, 2022 WL 621985, at *4 (S.D.N.Y. March 3, 2022), the court rejected Dr. Norris's conclusions, reasoning that he erroneously discounted relevant evidence as irrelevant and ignored evidence that contradicted his findings.

Plaintiff also cites cases raising suspicions of bias and/or cursory review by Dr. Norris in the claims administration process, many of which also question his qualifications. For example, in *Dwyer v. Unum Life Insurance Co.*, 548 F. Supp. 3d 468, 498 (E.D. Pa. 2021), Dr. Norris reviewed the file of a claimant who is a double amputee and denied the claim. In reversing the denial of benefits in that case, the court noted that Dr. Norris had been working for Unum since 2010 and had not treated patients since his hire. *Id.* at 483; *see also Boykin v. Unum Life Ins. Co.*, No. 19 CV 137, 2022 WL 458213, at *15-16 (E.D. Cal. Feb. 15, 2022) (granting "little weight" to Dr. Norris's evaluation because he did not examine claimant and neither party explained how long he had been reviewing claims or practicing medicine). Similarly, in *Boersma v. Unum Life Insurance Company*, 546 F. Supp. 3d 703, 713 (M.D. Tenn. 2021), the court disagreed with Dr. Norris's conclusion that the claimant did not suffer a disabling condition, noting that Dr. Norris "seems to have

5

simply assumed that fibromyalgia can never be disabling for the purposes of a sedentary job." The court in that case found "particularly striking" Dr. Norris's "conclusory rejection of the possibility that fibromyalgia might be disabling . . . given that he is not a rheumatologist and does not have meaningful expertise in the condition." *Id.*

Likewise, in *Tam v. First Unum Life Insurance Company.*, 491 F. Supp. 3d 698, 709 (C.D. Cal. 2020), the court rejected the "paper-reviews" Dr. Norris and his colleagues performed—none of whom had "experience or specialization" in treating her impairments—because they "mischaracterized and/or ignored evidence in the record." And in *Dewsnup v. Unum Life Insurance Company*, No. 17 CV 126, 2018 WL 6478886, at *10 n.3 (D. Utah Dec. 10, 2018), the court described the reviewing physicians'—including Dr. Norris's—evaluations as "troubling" and admonished Unum not to allow its reviewers to "cherry-pick[] the information helpful to its decision to deny [a] claim and disregard[] the contrary opinions of the medical professionals who examined, treated, and interviewed" the claimant. *See also Mistick v. Unum Grp. Corp.*, No. 19 CV 190, 2020 WL 13442144, at *6 (E.D. Tenn. March 30, 2020) (finding that Dr. Norris's report lacked support of objective evidence and "fail[ed] to explain why the medical records . . . reviewed demonstrate that [claimant was] capable of sedentary work"); *Rikimaru v. Unum Life Ins. Co.*, No. 19 CV 186, 2020 WL 13505360, at *6-9 (D. Colo. March 27, 2020) (deciding that claimant was entitled to benefits and rejecting Dr. Norris's opinion to the contrary, which claimant alleged relied on cherry-picked evidence); *Brown v. Unum Life Ins.*

6

*Co.*, 356 F. Supp. 3d 949, 968 (C.D. Cal. 2019) (finding Dr. Norris "placed far too much emphasis" on non-dispositive evidence); *Fleming v. Unum Life Ins. Co.*, No. 17 CV 1576, 2018 WL 6133859, at *10 (C.D. Cal. Nov. 20, 2018) (finding "unpersuasive" Dr. Norris's "paper-only review" because defendant failed to show how Dr. Norris's board certification in family, occupational, and aerospace medicine made him qualified to render the judgment he did); *Clark v. Unum Life Ins. Co.*, No. 17 CV 1119, 2018 WL 4931935, at *15-16 (M.D. Tenn. Oct. 10, 2018) (finding that Dr. Norris "merely restat[ed] unfavorable evidence" rather than "reconcil[ing] discrepancies").

Unum responds that Plaintiff "simply disparages Dr. Norris, professes that he is wrong on the medical merits, and demands a deposition." (R. 28, Def.'s Resp. at 2.) While the court issues no findings of fact on whether Dr. Norris has engaged in any misconduct or shown any bias in this or other actions, the court disagrees with Unum's characterization of this case as a "run-of-the-mill" ERISA case in which the parties simply disagree on the "medical merits." (R. 28, Def.'s Resp. at 8 (quoting *Midthun-Hensen v. Grp. Health Coop.*, No. 21 CV 608, 2022 WL 1442842, at *6 (W.D. Wis. May 6, 2022)).) Taken together, the cases Plaintiff discusses "raise[] the possibility that [Unum's] decision[-]making process . . . was structurally tainted in a material way." *Mohammed v. Prudential Ins. Co.*, No. 19 CV 3258, 2020 WL 4569696, at *7 (N.D. Ill. Aug. 7, 2020). Plaintiff thus meets the first step of the *Semien* standard.

Next, Plaintiff contends that she satisfies the second prong of the *Semien* standard because she has shown good cause to believe a deposition of Dr. Norris will reveal a procedural defect in Unum's handling of claims. (R. 24, Pl.'s Mem. at 10-15.) Plaintiff alleges here that Dr. Norris: (1) based his opinion solely on file review; (2) cherry-picked evidence; and (3) is not qualified to render medical judgment regarding her impairments. (R. 1, Compl. ¶¶ 13-15, 18; R. 24, Pl.'s Mem. at 10-11.) Plaintiff also contends that Dr. Norris "mistook" her "inability to work as a simple matter of choice." (R. 24, Pl.'s Mem. at 11.) She argues that these errors in the claims administration process, combined with Unum's history of "biased practices," amounts to "good cause to assume that the deposition of Dr. Norris will likely reveal a procedural defect" in its process. (Id. at 14.)

Unum responds that because it has offered to arrange for an independent medical examination ("IME") of Plaintiff, "the impact of any perceived conflict or bias" would be minimized and, as such, discovery is not warranted. (R. 28, Def.'s Resp. at 9.) But Unum cites no authority precluding limited discovery where a plan administrator has offered an IME to a claimant who satisfies the *Semien* standard. Unum further argues that Plaintiff "fails to articulate any specific evidence to be obtained from a deposition of Dr. Norris or how she contends the proposed testimony would illuminate [Unum's] alleged 'dual role' conflict or show any procedural conflict." (Id.) Unum's argument is unavailing as Plaintiff has made the necessary showing under *Semien* as softened by *Dennison*, making clear that she seeks testimony from Dr. Norris regarding his alleged conflict of interest, bias, lack

8

of expertise, and claims administration work for Unum. (R. 24, Pl.'s Mem. at 12-15.) Accordingly, because Plaintiff has shown more than a "thinly based suspicion" justifying limited discovery, this court exercises its "broad discretion" to permit Plaintiff to depose Dr. Norris. *Dennison*, 710 F.3d at 747.

At Dr. Norris's deposition, Plaintiff may discover information "comparable to conventional approaches to discrediting the testimony of retained experts whose objectivity may be challenged based on, e.g., the number of times he or she has served as an expert in support of a party and the amount of compensation received." *Demer*, 835 F.3d at 901. In particular, Plaintiff may question Dr. Norris regarding: (1) his training and expertise and whether they are considered when Unum assigns him to claims for review; (2) his experience reviewing and/or evaluating ERISA benefits claims; (3) his employment with Unum and compensation he has received, including whether he has any "financial incentive to deny" claims; (4) his knowledge of Unum's "general approval and termination rates" for LTD claims and, "separately, for [LTD] claims involving [Plaintiff's impairments]"; (5) his knowledge of the "steps [Unum] has taken to reduce bias and promote accuracy, such as walling off claims administrators from those interested in firm finances"; and (6) "any factors or evidence considered by [him] in denying Plaintiff's claim that are not contained in the administrative record." *Klein v. Northwestern Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1127 (S.D. Cal. 2011). These are the subject matters Plaintiff is permitted to explore during Dr. Norris's deposition.

9

## Conclusion

For the foregoing reasons, Plaintiff's motion for limited discovery to depose Dr. Norris is granted.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**