IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY BRAUN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | No. 1:22-cv-01223 |
|     v. | ) | |
| | ) | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) | Judge Robert W. Gettleman |
| | ) | |
| | ) | Magistrate Judge Young B. Kim |
|     Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

## I. INTRODUCTION

The plaintiff, Tammy Braun ("Braun"), brings this action against the defendant, Unum Life Insurance Company of America ("Unum") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Pl.'s Local Rule 56.1 Statement of Material Facts ("PSF") ¶60. Incident to her employment with Clark Hill, P.L.C., Braun received long-term disability ("LTD") insurance coverage under group policy number 215254 ("Policy") as a "participant," as defined by ERISA § 3(7) (29 U.S.C. § 1002(7)). PSF ¶3. Claims arising under the Policy are administered by Unum. PSF ¶1.

Braun suffers from a number of significant physical conditions, including familial hypophosphatemia, rickets, osteoarthritis, advanced degenerative joint disease, and bilateral carpal tunnel syndrome. PSF ¶6. Despite her best efforts to work through the severe pain caused by those conditions, Braun was forced to cease working completely effective January 26, 2021. PSF ¶8. She applied for LTD benefits under the Policy shortly thereafter. PSF ¶9. However, Unum denied Braun's claim on June 4, 2021. PSF ¶22. Braun appealed that decision, but Unum upheld its denial of benefits on February 15, 2022. PSF ¶59. For the reasons set forth below, Unum's benefit determination was unreasonable and the Court should grant summary judgment in Braun's favor.

## II. JURISDICTION

Jurisdiction of this Court is based on ERISA §§ 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)) and 28 U.S.C. § 1331. Def.'s Ans. to Pl.'s Compl. (Doc. 7) at ¶¶1-2. Venue is proper in this district pursuant to ERISA § 502(e)(1) (29 U.S.C. § 1132(e)(2)) and 28 U.S.C. § 1391. Doc. 7 at ¶¶4-5. ERISA provides a mechanism for internal appeals of benefit denials at § 503 (29 U.S.C. § 1133); and Braun has exhausted those avenues of appeal. PSF ¶60. Braun then brought this suit

for benefits pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), and for attorneys' fees and costs pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)). PSF ¶60.

## III. STATEMENT OF FACTS

Although Braun has filed a separate statement of facts, she recounts the most significant facts below. Prior to her disability, Braun worked for Clark Hill, P.L.C. as a legal administrative assistant, a skilled and sedentary exertion level occupation. PSF ¶2. However, her physical impairments and chronic pain forced her to cease working effective January 26, 2021. PSF ¶¶7-8.

Braun submitted a claim for LTD benefits under the Policy shortly thereafter. PSF ¶9. She included treatment records from John DeForest, D.O., her primary care physician since 2004, and John Geringer, M.D., her treating rheumatologist. PSF ¶10. Dr. DeForest assessed that Braun could not stand for more than 15 minutes at once, sit for more than 30 minutes at once, or walk for more than ten minutes at once. PSF ¶¶11-12. Dr. DeForest further restricted Braun from using stairs and stepladders, crouching, and squatting. *Id.* Braun also submitted abnormal x-ray results of her cervical, thoracic, and lumbar spine, as well as her knees, hips, and right shoulder. PSF ¶¶13-16. Braun further submitted reports of her widespread pain and resulting limitations that prevented her from performing the Material and Substantial Duties of her Regular Occupation. PSF ¶¶17-21.

On June 4, 2021, Unum denied Braun's LTD claim based on a vocational assessment conducted by Jessica Schoch, an employee of Unum. PSF ¶¶21-22. Schoch asserted that Dr. DeForest's restrictions were consistent with an ability to perform full-time sedentary work because Braun's Regular Occupation "would allow for changes in position for brief periods of time throughout the day." PSF ¶22. Unum also pointed out that Braun had worked through her conditions in the past as evidence she could continue to do so. PSF ¶23.

Braun appealed Unum's denial of benefits on September 13, 2021. PSF ¶24. She concurrently submitted updated treatment records from Dr. DeForest and Dr. Geringer, both of whom explicitly precluded her from performing her occupation. PSF ¶¶25-32. Braun also submitted witness statements that detailed firsthand observations of her disability. PSF ¶33-35. Braun herself prepared a statement under penalty of perjury in which she thoroughly described her various symptoms and resulting limitations. PSF ¶¶36-37. Finally, Braun submitted a law review article authored by Phillip W. Thomas titled *Fifteen Years Later: Did The Unum Group Improve its ERISA Claims Handling Practices?*. PSF ¶38. The article concerns Unum's 2004 regulatory settlement agreement ("RSA") with the United States Department of Labor and all 50 states. *Id.* The terms of the RSA and a subsequent addendum require Unum to afford significant weight to the opinions of a claimant's treating doctors, among other requirements. *Id.*

Nevertheless, Unum informed Braun that it planned to uphold its denial of her claim on November 23, 2021. PSF ¶39. Unum based that decision on a file-only review conducted by one of its medical consultants, Scott Norris, M.D. *Id.* Contrary to Braun's doctors, Dr. Norris asserted that Braun was physically capable of performing sedentary work. PSF ¶¶40-43. Unum afforded Braun the opportunity to respond to Dr. Norris' report prior to rendering a final decision. PSF ¶39.

On January 7, 2022, Braun submitted a detailed letter addressing the many flaws contained within Dr. Norris' report. PSF ¶44. Braun also submitted medical evidence that corroborated her inability to work, including statements from Dr. DeForest and Dr. Geringer, self-reports of her symptoms, results of x-rays taken of her feet, hands, and left shoulder, and the results of an MRI of her lumbar spine. PSF ¶¶45-52. However, Dr. Norris doubled down on his stance that Braun was capable of performing sedentary work. PSF ¶53. Per Dr. Norris, the recent x-ray results were "longstanding;" and Dr. Geringer's opinion was not supported by recent findings. *Id.*

Despite two additional responses letters and an updated statement from Dr. Geringer unequivocally disagreeing with Dr. Norris' opinion, Unum formally upheld its denial of Braun's LTD claim on February 15, 2022. PSF ¶¶55-59. Unum premised its decision on Dr. Norris' "independent review of all the medical records contained in [Braun's] claim file." PSF ¶59. Unum also dismissed Braun's concerns regarding the RSA because "it does not appear to pertain to [Braun's] individual claim circumstances." *Id.* Braun filed this lawsuit on March 8, 2022. PSF ¶60.

## IV. STANDARD OF REVIEW

### A. Summary Judgment Standard of Review

Braun moves for the entry of judgment in her favor under Fed. R. Civ. P. 56(a), which is proper if the evidence as a whole demonstrates no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even when drawing all reasonable inferences in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). When evaluating cross-motions for summary judgment, courts take "the facts in the light most favorable to the nonmovant, first for one side and then for the other." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs Loc. Union 150*, 335 F.3d 643, 648 (7th Cir. 2003).

### B. ERISA Standard of Review

Braun concedes the applicability of the "arbitrary and capricious" standard of review. The Seventh Circuit has made clear that "[r]eview under this deferential standard is not a rubber stamp," and courts should not "'uphold a termination when there is an absence of reasoning in the record to support it.'" *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010) (quoting *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774-75 (7th Cir. 2003)); *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 439 (7th Cir. 2019) (citing *Holmstrom*). "In some cases. . . simple common sense will require the court to pronounce an

administrator's determination arbitrary and capricious." *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

## V. ARGUMENT

The undisputed facts of this case establish that Unum abused its discretion when it assessed Braun's entitlement to LTD benefits. Unum's decision making process was poisoned by an irreparable conflict of interest that prompted it to not only rely on deeply flawed opinion evidence, but also to ignore all evidence supportive of Braun's disability. Therefore, absent rational support for its decision, this Court must reverse Unum's denial of Braun's LTD claim.

### A. <u>Unum's Inherent Conflict of Interest Poisoned Its Review of Braun's Claim</u>

In *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008), the Supreme Court of the United States held that an inherent conflict of interest exists when an ERISA disability claim administrator simultaneously determines whether a claimant qualifies for benefits and then pays those benefits out of its own pocket. That conflict "prove[s] more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* at 117. The Seventh Circuit followed that rationale *Marrs v. Motorola, Inc.*, 577 F.3d 783, 788-89 (7th Cir. 2009), when it found that it is the "*gravity* of the conflict, as inferred from the circumstances, that is critical" in determining whether to uphold a denial of benefits. (emphasis in original). *See also Raybourne v. Cigna Life Ins. Co.*, 2010 U.S. Dist. LEXIS 102501, *3 (N.D. Ill. Sept. 23, 2010) (Gettleman, J.) ("*Glenn* emphasized that the court should give added weight to the structural conflict [of interest] where the administrator has a history of biased claim administration"), *aff'd* by *Raybourne v. Cigna Life Ins. Co.*, 700 F.3d 1076 (7th Cir. 2012).

This is not a "run-of-the-mill" ERISA case where the parties simply disagree on the medical merits. PSF ¶63. To the contrary, Unum's unreasonable benefit decision is the product of its significant conflict of interest. Not only is Unum the decisionmaker and payor of benefits, but it has also exhibited a well-documented history of biased claims administration. PSF ¶¶1, 38, 61. Indeed, one court within this district found "Unum has enough of a documented 'history of biased claims administration,'" and has exhibited legitimate issues surrounding its decision to adequately weigh a plaintiff's supportive evidence. *Warner v. Unum Life Ins. Co.*, 2013 WL 3874060, *4 (N.D. Ill. Jul. 26, 2013) (quoting *Glenn*, 554 U.S. at 117). *See also* PSF ¶38. With that framework in mind, it is readily apparent that Unum's conflict of interest tainted its review and prevented it from making an unbiased and accurate claim decision. In turn, Unum abused its discretion.

    **B.**     **Unum's Conflict of Interest Caused It to Engage of a Selective Review of the Evidence and Blinded It to all Evidence Supporting Braun's LTD Claim**

Unum's pervasive conflict of interest encouraged it to engage in a selective review of the evidence by relying exclusively upon heavily flawed, in-house-generated evidence to the detriment of the bounty of Braun's evidence, the latter of which unequivocally established her inability to perform the Material and Substantial Duties of her Regular Occupation. Unum relied most heavily on the opinion rendered by Dr. Norris, whom Unum boldly identified as "independent." PSF ¶¶39, 54, 57, 59. Unum also premised its initial denial of benefits on Schoch's vocational opinion. *Id.* at ¶22. For the following reasons, Unum's reliance on that evidence was arbitrary and capricious.

    1)     <u>Dr. Norris' Medical Opinion</u>

Unum's reliance on Dr. Norris' opinion was downright unreasonable in several respects. ERISA claim administrators cannot engage in improper "cherry-picking" when assessing a claimant's entitlement to benefits. *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 832-33 (7th Cir. 2009); *Holmstrom*, 615 F.3d at 776-77 (holding that the claimant "has

offered sufficient evidence to establish continuing disability under the plan, and. . . MetLife's rejection of that evidence has been based on selective readings that are not reasonably consistent with the entire picture"); *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 550 (6th Cir. 2015) (defendant abused its discretion in terminating the claimant's benefits because "it ignored favorable evidence submitted by his treating physicians, selectively reviewed the evidence it did consider from the treating physicians. . . and heavily relied on non-treating physicians"). That is precisely the conduct the Supreme Court criticized in *Glenn*, *supra*, which was critical of an insurer's failure to take all the evidence into consideration and found that reliance on a single outlier report was an abuse of discretion.

Dr. Norris' review of Braun's medical evidence serves as a textbook example of cherry-picking – without ever examining Braun, he selectively emphasized irrelevant findings while simultaneously mischaracterizing and ignoring the mountain of supportive evidence from Braun's treating doctors and Braun herself. In fact, his report mirrors a report he recently rendered at issue in *Boykin v. Unum Life Ins. Co. of Am.*, 2022 WL 458213, *8 (E.D. Cal. Feb. 15, 2022):

> Dr. Norris opined that Plaintiff was not functionally precluded from performing his full-time occupational duties from July 18, 2016 through the elimination period, and beyond. Dr. Norris explained that Plaintiff's examination findings were not consistent with the severe level of impairment as reported by Plaintiff or with a degree of functional compromise that would preclude medium level work. . . Dr. Norris also noted that diagnostic testing/imaging did not identify structural disease or other pathologic conditions consistent with functional loss, and that Plaintiff's level and intensity of treatment remained stable without evidence of a significant acceleration or advancement that would be expected or consistent with refractory or progressive symptoms.

(internal citations omitted); *compare* PSF ¶¶41, 61.

Dr. Norris' near-verbatim opinion come as little surprise – there are at least 16 recent instances where various district courts have chastised Unum for relying on Dr. Norris' flawed medical opinions to deny or terminate a claimant's disability benefits. PSF ¶61. Yet, despite those

7

cases evidencing a clear pattern of erroneous and biased evaluations, Unum continues to utilize and rely upon Dr. Norris to assess already denied or terminated claims. PSF ¶¶61, 64. In fact, Unum goes one step further and rewards Dr. Norris with performance-based salary raises, performance-based bonuses, and even stock ownership in the company. PSF ¶¶61, 64, 75. Thus, Dr. Norris profits when he renders an opinion that Unum can use to justify an adverse benefit determination. *See Glenn*, 554 U.S. at 112 ("every dollar provided in benefits is a dollar spent by. . . [Unum]; and every dollar saved is a dollar in [Unum's] pocket") (citation omitted).

Dr. Norris' review was particularly selective pursuant to Unum's request that he limit the overwhelming majority of his review to Braun's Elimination Period (January 26, 2021 through April 25, 2021) and, consequently, write off all evidence which postdated that period. PSF ¶¶41-43, 68. In *Holmstrom*, 615 F.3d at 766, the Seventh Circuit reasoned that a disability claimant could never successfully appeal an insurer's denial of benefits if the claimant had not already undergone the exact testing the insurer argued was lacking. Thus, a claimant's subsequent medical evidence relates back to her initial disability period; and she cannot be faulted for her inability to foresee what evidence the insurer would ultimately require of her. *Id. See also Silver v. Exec. Car Leasing LTD Plan*, 466 F.3d 727, 734 (9th Cir. 2006) (reversing Unum's benefit determination that the claimant was not impaired during the elimination period because "such a finding disregards the progressive and degenerative nature of [claimant's conditions], and it overlooks the recommendations of [claimant's treating doctor], who had advised [claimant] only in recent visits that he was in no shape to be working"). Indeed, as another court expressed:

> The court must now deal with First Unum's argument that any reports of plaintiff's condition subsequent to January 1, 1996 must be disregarded because they do not necessarily reflect plaintiff's condition at the time benefits were terminated. . . This argument is incorrect. . . even after the January 1, 1996 termination of benefits, First Unum repeatedly offered plaintiff the opportunity to submit additional information regarding his medical condition. First Unum could not, on the one

> hand, offer to consider plaintiff's medical reports submitted after January 1, 1996 and then refuse to do so when those reports were unfavorable to it.

*Slupinski v. First UNUM Life Ins. Co.*, 2005 WL 2385852, *8 (S.D.N.Y. Sept. 27, 2005), *rev'd in part by* 554 F.3d 38 (2d Cir. 2009) (only as to denial of fees and interest).

Relation-back of evidence is also consistent with ERISA's appeal process – a claimant possesses a statutory right to receive a full and fair review of her claim that "takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(iv). Indeed, a claimant will compile and submit evidence which postdates the benefit denial in an attempt to "perfect" her claim. *See Holmstrom*, 615 F.3d at 775-76 (arbitrary for insurer to deny claim under a new rationale after suggesting plaintiff could submit new evidence to perfect her claim). Consequently, if disability insurers could write off all evidence generated after the initial benefit denial as untimely, then ERISA's statutory right to an appeal would be pointless. *See e.g. Solari v. Partners Healthcare Sys., Inc.*, 2021 WL 2627962, *2 (D. Mass. Apr. 21, 2021) (defendant's dismissal of evidence postdating termination of benefits "goes too far" in light of ERISA's appeal process); *Slupinski*, 2005 WL 2385852 at *8.

Dr. Norris weaponized Braun's Elimination Period to brush aside as not time relevant the incontrovertible evidence Braun submitted on appeal and rebuttal. PSF ¶¶41, 43, 68. His narrow focus is particularly egregious for three reasons. First, Unum specifically requested that Braun submit additional evidence for its review on multiple occasions. PSF ¶¶22-23, 39, 42, 53-54, 57. Unum's focus on the Elimination Period renders those numerous requests nothing more than a façade. Second, Dr. Norris contradicted himself – after initially dismissing Dr. Geringer's residual functional capacity questionnaire ("RFC") because it was dated three months after Braun's Elimination Period, Dr. Norris quickly pivoted to reject Dr. Geringer's retroactive opinion that

9

Braun could not work because the latter did not submit new clinical findings. PSF ¶¶43, 47, 53, 57. Put elsewise, Dr. Norris utilized opposite rationales to dismiss supportive evidence from the same treating doctor. And third, this is not Dr. Norris' first time improperly fixating on a claimant's elimination period to render a report favorable to his employer. *See e.g. Chicco v. First Unum Life Ins. Co.*, 2022 WL 621985, *4 (S.D.N.Y. Mar. 3, 2022) (Dr. Norris "discounted as not time-relevant physical findings from examinations performed after Chicco stopped working. But Chicco's condition is progressive, and her exam findings are consistent with a worsening condition causing increasing pain – precisely what Chicco argues stopped her from being able to work"); *Tam v. First Unum Life Ins. Co.*, 491 F. Supp. 3d 698, 711 fn.11 (C.D. Cal. 2020) ("Dr. Norris stated the exams are not time relevant. . . However, it is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis") (citations omitted); *Fleming v. Unum Life Ins. Co. of Am.*, 2018 WL 6133859, *6 (C.D. Cal. Nov. 20, 2018) (Dr. Norris dismissed findings as not time relevant); *Boykin*, 2022 WL 458213 at *15-16 (same). Therefore, this Court cannot accept Dr. Norris' selective review at face value.

In addition to his selective review, Dr. Norris mischaracterized evidence that supported Braun's entitlement to LTD benefits. Unum's RSA requires that its in-house doctors "[r]epresent medical and vocational facts accurately. . . [and] honestly." PSF ¶38. Dr. Norris neglected that requirement when addressing Braun's x-ray and MRI findings, daily activities, and treatment. More specifically, he asserted the February 2021 and December 2021 test results did not identify structural disease consistent with severe impairment. PSF ¶¶41, 53. Yet, he later conceded:

- Hypophosphatemia can be associated with severe pain, "likely due to the resultant degenerative joint disease," that can prevent an individual from performing a sedentary physical demand job;
- Degenerative joint disease is progressive and can be associated with severe pain that prevents an individual from performing sedentary-level work;

10

- The February 2021 x-rays "clearly showed" degenerative changes, some of which were the highest possible level of severity;
- The December 2021 findings "certainly show some underlying degenerative changes [that] can often be associated. . . [with] significant pain"; and
- Braun's reports of severe pain are credible and "well-documented."

PSF ¶¶65-66, 72-73, 76. As such, Dr. Norris baselessly dismissed objective evidence of structural disease consistent with severe impairment that corroborated Braun's credible reports of chronic pain. *See* PSF ¶¶13-16, 51-52.

Relatedly, Dr. Norris' dismissal of the significant December 2021 findings as not acute stems from his theory that disability is a matter of choice – more specifically, that Braun's ability to work through her chronic impairments in the past meant that she possessed the ability to continue working beyond January 26, 2021. PSF ¶¶23, 42, 69, 73. That belief is contrary to the Seventh Circuit's holding in *Hawkins v. First Union Corp.*, 326 F.3d 914, 918 (7th Cir. 2003), where the Court explained that a disabled claimant "may have forced himself to continue in his job for years despite severe pain . . . and finally have found it too much and given it up even though his condition had not worsened." Ultimately, Dr. Norris admitted that it was possible Braun could have managed to work through her chronic pain until she could no longer do so; and that there was no evidence to suggest Braun does not want to work. PSF ¶¶69-70.

Dr. Norris also mischaracterized Braun's activities as consistent with the physical demands of sedentary work. PSF ¶¶41, 71. In doing so, he omitted key details in an apparent attempt to make her appear more physically active. PSF ¶71. In reality, Braun's reported activities are entirely inconsistent with the ability to perform sedentary-level work. *Id.*; PSF. ¶¶17-21, 33-37, 48-50, 71. In any event, sporadic daily activities do not serve as proof that a disability claimant can work full-time. *Druhot v. Reliance Std. Life Ins. Co.*, 2017 WL 4310653, *10-11 (N.D. Ill. Sept. 28, 2017) (citing *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)).

11

Dr. Norris further misclassified Braun's medical treatment as stable, conservative, and modest. PSF ¶41. That assertion is made out of context by omitting the fact that Braun cannot afford additional treatment, nor can she undergo surgery due to her rickets. PSF ¶¶41, 67. Dr. Norris even claimed that none of Braun's doctors precluded her from undergoing surgery, but Dr. DeForest did just that. PSF ¶¶11, 67. Again, this is not Dr. Norris' first time mischaracterizing evidence that supports a claimant's entitlement to LTD benefits. *See e.g. Tam*, 491 F. Supp. 3d at 710 (finding Dr. Norris mischaracterized evidence); *Rios v. Unum Life Ins. Co. of Am.*, 2020 WL 7311343, *1 (C.D. Cal. Dec. 10, 2020) (same), *aff'd in part and rev'd in part on other grounds*.

Finally, Dr. Norris' perfunctory review discredited Dr. DeForest's and Dr. Geringer's respective opinions, both of whom unequivocally and continually endorsed Braun's inability to perform the duties of her job. PSF ¶¶11-12, 26-32, 45-47, 56. Dr. Norris' offhanded dismissal of their opinions also violated Unum's RSA, which requires that he afford significant weight to treating doctors' opinions and to fairly interpret and apply information from those doctors. PSF ¶38. Although Dr. Norris insists he did so here, his ultimate conclusion is irreconcilable with the evidence provided by Dr. DeForest and Dr. Geringer.

The aforementioned discussion makes clear that Braun's case is just the latest installment in Unum's selective review of a claimant's evidence. *See* UA-CL-LTD-000427 ("[m]any decisions cited below found Unum cherry-picked from the record and/or ignored evidence favorable to the claimant") (citing cases). Just as in *Dewsnup v. Unum Life Ins. Co. of Am.*, 2018 WL 6478886, *10, fn.3 (D. Utah Dec. 10, 2018), Dr. Norris "simply parsed [Braun's] file and compiled what [he] believed to be contradictory evidence" to render an adversarial opinion contrary to two treating doctors. *See also Clark v. Unum Life Ins. Co. of Am.*, 2018 WL 4931935, *15 (M.D. Tenn. Oct. 10, 2018) (where Dr. Norris "merely restat[ed] unfavorable evidence [which] is insufficient

to satisfy the arbitrary and capricious standard"); PSF ¶¶61-63. Given Unum's knowledge of Dr. Norris' track record, its ongoing practice of sending previously denied claims for his review reeks of a structural conflict of interest devoid of the fiduciary duties Unum owes to its claimants, including Braun, under ERISA. PSF ¶¶61, 64, 75; 29 U.S.C. § 1104. Accordingly, Unum's denial of Braun's LTD claim cannot stand.

2) Schoch's Vocational Assessment

Unum's conflict of interest further hindered its decision making process via its adoption of Schoch's deficient vocational assessment. "Conclusions without explanation do not provide the requisite reasoning and do not allow for effective review." *Tate v. Long Term Disability Plan for Salaried Emples. of Campion Int'l Corp. #506*, 545 F.3d 555, 562 (7th Cir. 2008) (citing *Hackett*, 315 F.3d at 775). Nevertheless, Schoch's findings were purely conclusory. First, she claimed that Dr. DeForest's May 18, 2021 restrictions were consistent with the ability to perform sedentary level work. PSF ¶22. That is false – Dr. DeForest restricted Braun from standing for 15 minutes at once, sitting for 30 minutes at once, and walking for ten minutes at once. PSF ¶12. Those constant positional changes are incompatible with the physical ability to perform sedentary work. *See e.g. Shupe v. Hartford Life & Accident Ins. Co.*, 19 F.4th 697, 709-10 (4th Cir. 2021) (defendant's assertion the claimant "was capable of full-time sedentary employment is contradicted by [the claimant's] . . . around-the-clock rotations between sitting, standing, walking, and lying down [which make] it nearly impossible to sustain any acceptable level of productivity to maintain employment") (citing *Myers v. Hercules, Inc.*, 253 F.3d 761, 766-67 (4th Cir. 2001), which held that the claimant was disabled because "prolonged sitting – the very thing required in most sedentary jobs – aggravated [claimant's] symptoms"). *See also* PSF ¶¶17, 20, 37, 48, 56 (prolonged sitting exacerbates Braun's back pain). Furthermore, when taken in context, Dr. DeForest's various

13

statements make clear he has continuously endorsed Braun's inability to perform full-time, sedentary work. PSF ¶¶11, 26-28, 45-46.

Even assuming those restrictions were consistent with the physical demands of sedentary work, Schoch still failed to support her conclusion that Braun's Regular Occupation would allow positional changes for brief periods throughout the day. PSF ¶22. Indeed, Schoch did not explain that assertion at all; and there is no evidence whatsoever to suggest that the occupation can accommodate Braun's need to constantly change positions at will. *See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 459-60 (9th Cir. 1996) (defendant's assumption that identified occupation could potentially make accommodations for the claimant's physical restrictions was unreasonable); *Patrick v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan*, 638 F. Supp. 2d 1195, 1212 (S.D. Cal. 2009) (finding defendant's vocational opinion that "some accommodations might need to be made" unreasonable because "there is no evidence that accommodations **could** have been made") (emphasis in original). Consequently, Unum's reliance on Schoch's vocational assessment lacked reason.

## VI. REMEDY

The above discussion makes evident that "Unum is demonstrably unable to exercise its discretion honestly and fairly" and abandoned its fiduciary duties. *See Host v. First Unum Life Ins. Co.*, 569 F. Supp. 3d 48, 59-60 (D. Mass. 2021) (citing *Conkright v. Frommert*, 559 U.S. 506, 517 (2010)). Unum must approve Braun's LTD claim effective April 26, 2021 and disburse all payments owed through the date of judgment. Remanding the claim to Unum is inappropriate because neither ERISA nor its legislative history permits a court to issue a non-final order without fully adjudicating the rights and remedies of the parties. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937) (requiring federal courts to issue final, conclusive judgments); *Perlman v.*

*Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 978 (7th Cir. 1999) (finding it "doubtful as an original matter that a district court may 'remand' ERISA claims, as if to administrative agencies"); *Tam*, 491 F. Supp. at 712 (remand to Unum improper because it creates an unfair 'heads we win; tails, let's play again' adjudication system) (internal citations omitted).

In addition to benefits due, Braun is entitled to an award of prejudgment interest on the benefits Unum erroneously denied. *See Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 819-20 (7th Cir. 2002) (awarding prejudgment interest at the rate of 8.33%). Braun is also entitled to attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) due to her achievement of "some degree of success on the merits." *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010); *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011). Given that the evidence unequivocally establishes that Unum wrongfully denied and failed to engage in a reasoned analysis of Braun's claim, she is entitled to prejudgment interest and reasonable attorneys' fees and costs.

## VII. CONCLUSION

For the reasons presented above, Plaintiff seeks entry of judgment in her favor and against Defendant pursuant to Fed. R. Civ. P. 56, along with an award of her attorneys' fees and costs.

Dated: March 10, 2023                                         Respectfully Submitted,

                                                              */s/ Matthew T. Maloney*
                                                              One of Plaintiff's Attorneys

                                                              Mark D. DeBofsky
                                                              Matthew T. Maloney
                                                              DeBofsky Law, Ltd.
                                                              150 N. Wacker Dr., Suite 1925
                                                              Chicago, IL 60606
                                                              (312) 561-4040
                                                              (312) 600-4426 (fax)
                                                              mdebofsky@debofsky.com
                                                              mmaloney@debofsky.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on March 10, 2023, he electronically filed the foregoing with the Clerk of the Court using the CMF/ECF filing system, which sent notice of such filing to all attorneys of record who have appeared in this matter.

/s/ *Matthew T. Maloney*
One of Plaintiff's Attorneys

Mark D. DeBofsky
Matthew T. Maloney
DeBofsky Law, Ltd.
150 N. Wacker Dr., Suite 1925
Chicago, IL 60606
(312) 561-4040
(312) 600-4426 (fax)
mdebofsky@debofsky.com
mmaloney@debofsky.com