IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY BRAUN | ) | |
| | ) | |
| *Plaintiff* | ) | Case No. 1:22-cv-01223 |
| | ) | |
| *v.* | ) | Judge Robert W. Gettleman |
| | ) | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA | ) ) | Magistrate Judge Young B. Kim |
| | ) | |
| *Defendant* | ) | |

# UNUM LIFE INSURANCE COMPANY OF AMERICA'S
# REPLY TO ITS MOTION FOR SUMMARY JUDGMENT

*Attorney for Unum Life Insurance Company of America*

Jacqueline J. Herring (6282246 – IL)
HINSHAW & CULBERTSON LLP
151 North Franklin Street Suite 2500
Chicago, Illinois 60606
P  312.704.3975 | F  312.704.3001
JHerring@hinshawlaw.com

**INTRODUCTION**

ERISA and the Plan place the burden on Plaintiff Tammy Braun to establish that she satisfied the Plan's definition of disability. Specifically, that due to her medical condition, she was unable to perform the material and substantial duties of her regular occupation as a legal secretary, which were to provide clerical support to attorneys, including typing documents, computer data entry, electronic filing, answering telephone calls, and maintaining case files.

Unum Life Insurance Company of America ("Unum Life"), in its initial Memorandum, chronicled the substantial evidence that provides rational support for Unum Life's determination to deny Braun's claim for benefits when she failed to demonstrate that she satisfied the Plan's definition of disability. That evidence includes the contemporaneous medical records that show the absence of any clinical findings or medical opinions that Braun had any limitations on the use of her hands or that she had any cognitive impairment, which are key functional capabilities for the performance of her material and substantial duties as a legal secretary.

Contemporaneous clinical exams by Braun's treatment providers also document that she had good range of motion, no swollen joints in her arms or legs, no significant muscle weakness, no gait instability, and no sensory loss that would impair functioning. She had low intensity stable treatment for her conditions, and no side effects from any medication. Her rheumatologist contemporaneously opined that she had no functional restrictions, and the functionality identified by her primary care physician did not render her unable to perform her occupational duties.

Unum Life consulted medical and vocational experts, who concluded Braun did not have functional limitations that prevented her from performing the material and substantial duties of her occupation. Based on the totality of the evidence, Unum Life reasonably determined that Braun failed to satisfy the Plan's terms for payment of benefits and denied her claim.

Braun, in her Response, broadly proclaims that she is "disabled" and cannot do sedentary work. But she fails to address the Plan's specific requirements to qualify for disability benefits and the clinical findings that inform analysis of her functional capabilities. Nor does she identify any substantial and material duty of her occupation as a legal secretary that she contends she was unable to perform. Instead, she again launches personal attacks on Dr. Norris.

Dr. Norris is triple board certified in internal medicine, occupational medicine, and aerospace medicine, and has never been disciplined by any medical board. He has a Master's degree in public health, and decades of experience assessing return to work capabilities, including more than 20 years of service in the United States Air Force. Notwithstanding Braun's ad hominem attacks, Dr. Norris's opinions are based on a thorough evaluation of the medical facts specific to Braun's case as explained in his medically detailed reports that provide comprehensive rationale for his conclusions premised on the medical evidence from Braun's treatment providers. Unum Life appropriately considered Dr. Norris's opinions as part of its claim determination.

Unum Life evaluated all the evidence, consulted qualified experts, and reasonably determined Braun failed to qualify for payment of disability benefits under the terms of the Plan. Applying arbitrary and capricious review, Unum Life's claim determination prevails because it has rational support in the administrative record. Judgment should be entered for Unum Life.

**ARGUMENT**

**I.     Deferential Judicial Review under ERISA's Arbitrary and Capricious Standard.**

The parties agree that Unum Life's claim determination is reviewed under ERISA's "arbitrary and capricious" standard. This deferential standard "creates a high hurdle" for the claimant. *Ten Pas v. Lincoln Nat'l Life Ins. Co.*, 31 F.4th 541, 545 (7th Cir. 2022). Applying deferential judicial review, Unum Life's claim determination "may not be deemed arbitrary and

2
83539\313728032.v1

capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017) (quotation omitted).

Braun has the burden to establish that she satisfied the Plan's terms for payment of benefits and that there was "no rational support in the record" for Unum Life's determination. (¶ 6).[1] *See Arenson v. First Unum Life Ins. Co.*, --- F. Supp. 3d ---, 2023 WL 184233, at *4 (N.D. Ill. Jan. 13, 2023) (quoting *Frye v. Thompson Steel Co., Inc.*, 657 F.3d 488, 495 (7th Cir. 2011)); *Cheney v. Standard Ins. Co.*, 831 F.3d 445, 450-451 (7th Cir. 2016) (claimant's burden of proof).

Braun, in her Response, endeavors to shift her burden of proof to Unum Life, insisting that Unum Life must "justify" its determination, and "explain away" any contrary evidence. (Pl. Resp. pgs. 9, 11, 12). She distorts arbitrary and capricious review by imploring the Court to re-weigh the evidence and afford more weight to the evidence that favors her.

Braun's concept of the arbitrary and capricious standard is contrary to the parameters of deferential judicial review. ERISA does not impose "a discrete burden of explanation" on Unum Life when it makes a discretionary choice between conflicting evidence. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). "[N]or should district courts require such an explanation following a claim denial." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814 (7th Cir. 2006). "[R]aising debatable points does not entitle the claimant to a reversal under the arbitrary-and-capricious standard." *Id*. at 812 (brackets and quotation omitted).

Unum Life's determination must be judicially reviewed in the context of the evidence as a whole, not by specific criticisms that impermissibly demand "a discrete burden of explanation." The evidence need not be unanimous, "justified" or "explained away" for Unum Life's claim decision to be reasonable and rationally supported. "[T]he objective here is not to determine if

---

[1] Citations to "¶ _" are to Unum Life's Statement of Material Facts (Doc. No. 45); to "AR00_" are to the last digits in the Bates number "UA-CL-LTD-00" in the Administrative Record. (Doc. 38-1 to 38-4).

83539\313728032.v1

Unum's decision is correct, but only if it is reasonable." *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 578 (7th Cir. 2006). "'Questions of judgment are left to the plan administrator'" and it is not the court's "'function to decide whether [it] would reach the same conclusion as the administrator.'" *Arenson*, 2023 WL 184233, at *4 (quoting *Davis*, 444 F.3d at 576).

**II.    Unum Life's Determination was Reasonable and Not Arbitrary or Capricious.**

    **A.    The record rationally supports Unum Life's claim determination.**

The Supreme Court recognizes that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Yet Braun, in her Response and despite her burden of proof, fails to engage with the specific terms and requirements of the Plan or explain how she satisfies them. Instead, she broadly professes that she is "disabled" and cannot do sedentary work, and proclaims there is a "mountain" and "bounty" of evidence to support her claim. However, she fails to identify or discuss any medical evidence anywhere in her Response.

Judicial review of Unum Life's claim determination must be grounded in the Plan's terms and the specific facts of Braun's claim. The Plan's definition of disability requires that Braun be "limited from performing the material and substantial duties of your regular occupation due to your sickness or injury," and defines "limited" as "what you cannot or are unable to do." (¶ 3). The Plan thus requires a *functional* analysis, and simply having a diagnosed condition does not satisfy the Plan. *See Kuznowicz v. Wrigley Sales Co., LLC*, No. 11 C 165, 2013 WL 4052381, at *16 (N.D. Ill. Aug. 12, 2013) (disability requires not just a diagnosis, but "that the sickness prevented him from performing the 'material and substantial duties' of his occupation").

The Plan defines "material and substantial duties" as those that are both "normally required" for the occupation and that also "cannot be reasonably omitted or modified." (¶ 5). There is no

4

disagreement that Braun's regular occupation was as a legal secretary.  The evidence establishes that the "material and substantial" duties of her occupation as a legal secretary were to provide clerical support to attorneys, including typing documents, computer data entry, electronic filing, answering telephone calls, and maintaining files.  (¶¶ 10-12, 18).  Performance of these duties allows for changes in position throughout the day.  (¶ 19).  *See Cheney*, 831 F.3d at 452 (attorney's computer work may be performed by shifting from sitting to standing).

To satisfy the Plan's functional requirements, the Plan obligates Braun to provide proof of her claim, including "that your sickness or injury causes you to have limitations on your functioning and restrictions on your activities preventing you from performing your regular occupation."  (¶ 6).  The Plan further mandates that Braun "must" be continuously disabled throughout a 90-day elimination period, which for Braun was from her cease work date on January 26, 2021 to April 25, 2021.  (¶ 7).  Braun's functionality and activities during this three-month period are thus key factors in the evaluation of her claim.

The medical evidence during this critical period of time rationally supports Unum Life's determination that Braun failed to satisfy the Plan's terms for payment of benefits.  Her clinical examination findings were largely normal.  On February 22, 2021 and March 19, 2021, exams by rheumatologist Charles E. Geringer, M.D. document good range of motion in all upper and lower extremity joints and no swollen or tender joints.  Dr. Geringer noted that she was "comfortable and in no acute distress," and had otherwise normal findings.  (¶¶ 25-26).

Braun's physical therapy evaluation on April 21, 2021, at the end of the elimination period, described Braun having "good strength throughout, except for weakness in glut max and TA strength [transverse abdominis]."  (¶ 37).  Braun had 5/5 strength in her knees and ankles, 5/5 strength in her shoulders other than 4/5 on left abduction (raising arm out to the side), and

strength in her hips at 3+/5 to 4+/5. (¶ 37). Braun had no deficits in sensation in her extremities. (¶ 37). At her final physical therapy visit nine days later on April 30, 2021, Braun reported "0 – No Pain/10," improved mobility, and less pain overall. (¶ 38). On May 12, 2021, Braun reported to Unum that her "right knee is a little crooked but otherwise the hypophosphatemia has not caused any musculoskeletal problems." (¶ 14).

Braun's clinical exam findings during the three-month elimination period thus fail to support that she had limitations on her functioning or restrictions on her activities that made her unable to perform her occupational duties as a legal secretary. Consistent with these largely normal exams, Dr. Geringer on June 2, 2021, a few weeks after the end of the elimination period, advised Unum Life that Braun "has been given no restrictions" on her functional capabilities. (¶ 24).

Braun also had stable, minimal medications, and no medication side effects during the elimination period. On February 22, 2021, a month after Braun stopped working, her medications were only vitamins B, D, and E, and allergy medications. (¶ 25). At the February office visit with Dr. Geringer, he added a "trial of Flexeril," a muscle relaxant, to be taken as needed at bedtime. (¶ 25). On August 6, 2021, Dr. Geringer specified that Braun had "no side effects" from medication. (¶ 32).

Braun's bone density test on February 15, 2021, established that she did not have osteoporosis. Her lumbar spine was normal. She had only slightly reduced bone density in her left hip at the connection between the femoral shaft and femoral head, that was at the very low end of the threshold to qualify for osteopenia (low bone mass; score of -1.0 on a range of -1.0 to -2.4). (¶ 35). She had no documented history of fractures. (¶ 41).

In assessing Braun's functionality, neither Dr. Geringer nor primary care physician John DeForest, D.O., identified any limitations on use of her hands or in her mental capabilities. (¶¶

6

15-16, 32). Nothing in any of her exams during the elimination period documented any signs, symptoms, or treatment plan for impairing carpal tunnel syndrome. (AR00298-302; ¶¶ 25-26, 41, 44-46). Braun's normal mental functioning and the lack of any functional limitations with her hands reasonably supports Unum Life's determination that she failed to establish that she was unable to perform her occupational duties as a legal secretary. *See Allen v. Lilly Extended Disability Plan*, 379 F. Supp. 3d 743, 753 (S.D. Ind. 2019), *appeal dismissed*, 2020 WL 6260038 (7th Cir. Apr. 7, 2020) (absence of evidence "provides a rational basis" for claim denial).

The medical opinions of Scott B. Norris, M.D. and Megan Yeaton, RN BSN provide further support for Unum Life's claim determination. Both Dr. Norris and Nurse Yeaton evaluated the medical evidence and concluded that Braun did not have functional limitations that prevented her from performing the material and substantial duties of her occupation as a legal secretary. (¶¶ 39, 43, 56, 61). They provided medically detailed analyses delineating the specific fact-based medical rationale for their opinions. (¶¶ 39-49, 56-58, 61). *See Black v. Long Term Disability Ins.*, 582 F.3d 738, 745-46 (7th Cir. 2009) ("Ultimately, [the insurer's] consulting physicians presented thorough and reasonable explanations for their determinations, and [the insurer] was permitted to give them credence."); *Davis*, 444 F.3d at 576 (permissible for administrator "to check the veracity and genuineness of [claimant's] claim and his doctors' opinions").

Dr. Norris and Nurse Yeaton explained that Braun had stable conservative treatment of modest intensity. (¶¶ 49, 56). Throughout the elimination period, there was no "evidence of a significant acceleration or advancement that would be expected or consistent with refractory/progressive sxs [symptoms] or ongoing impairment." (¶ 46). Her chronic hypophosphatemia was "conservatively managed" by primary care physician Dr. DeForest. (¶ 46). Dr. Geringer did not change her conservative level of treatment at his office visits in March

7

and June 2021. (¶¶ 46, 58). Braun's joint exams showed good range of motion, no swollen or tender joints, and only mild weakness in her left shoulder and hip. (¶¶ 40, 44).

Braun had effective consistent medication management. (¶ 49). Dr. Norris explained that the "Records indicate that the insured's pain was controlled as evidenced by the stable dosing of Tylenol, NSAIDs, a muscle relaxant, and occasional oral narcotic medications through the EP [elimination period]." (¶ 46). Braun had no medication side effects. (¶¶ 41, 49). There were no abnormal mental status examinations to indicate any cognitive difficulties. (¶ 41).

Braun had some arthritic and other findings on imaging. But there was no evidence that these findings resulted in functional impairment as required to establish disability under the Plan. Nurse Yeaton explained that "although the imaging studies show osteoarthritis in many joints, the physical examination findings performed by [Dr. Geringer] are not capturing deficits to support the inability to perform the occupational demands." (¶ 39). Dr. Norris explained that the April 2021 physical therapy exam "described functional cervical and lumbar ROM [range of motion] w/o evidence of impairing radiculopathy." (¶ 44; AR000636). Braun's x-ray and MRI findings in December 2021 were longstanding and not consistent with impairment that would preclude her from performing her occupational duties. (¶ 56). *See Houston v. Provident Life & Acc. Ins. Co.*, 390 F.3d 990, 996 (7th Cir. 2004) ("[T]he MRI merely aided the diagnosis of a herniated disc, and the record offers insufficient objective documentation that this medical condition rendered Ms. Houston unable to perform sedentary work.").

Braun had no documented symptoms or treatment plan for carpal tunnel syndrome. (¶ 41). Her exams did not report sensory loss or other findings of impairment. (¶¶ 44-46). She had no injections, splint or other treatment. (¶ 46). Her only EMG was in February 2014, and she had carpal tunnel release surgery in April 2014, seven years before she stopped working. (¶ 47).

Braun's reported activities were also consistent with sedentary work capacity, including "caring for her dogs, cleaning, dusting, sweeping/mopping, gardening 5-30 minutes, using a self-propelled push mower, reading, listening to tapes, watching TV, checking emails, and sitting at a computer for 15 minutes." (¶¶ 41, 46). *See Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 609 (7th Cir. 2007) (holding ERISA administrator's consideration of claimant's activities is reasonable).

Unum Life's claim determination is rationally supported by the medically detailed opinions of Dr. Norris and Nurse Yeaton. "Because Unum's doctors reasonably explained their decisions, and those opinions are 'rationally supported by record evidence,' the Court must defer to Unum's choice to credit those opinions over those of [the claimant's] doctors." *Arenson*, 2023 WL 184233, at *5 (quoting *Black*, 582 F.3d at 745-46). *Accord*, *Davis*, 444 F.3d at 576-578.

Braun argues that by not blindly accepting Dr. Geringer's complete retraction of his prior opinion, Unum Life and Dr. Norris impermissibly "moved the target." She accuses Unum Life of disregarding her treating physicians' opinions and her subjective reports. (Pl. Resp. pgs. 13-14). Unum Life did not ignore Braun's subjective assessments or her treating physicians. Unum Life considered them and explained why they were not persuasive in light of the entirety of the medical evidence. *See Arenson*, 2023 WL 184233, at *6 (consulting physician "did recognize that possibility; she just rejected it"); *Sieg v. Hartford Life & Acc. Ins. Co.*, 597 F. Supp. 3d 1287, 1296 (E.D. Wis. 2022) (Consultant "did not disregard [claimant's diagnosis] or her subjective experience of it. Instead, he found that the testing and exam findings did not support [claimant's] providers' conclusions that she was" unable to work.); *accord*, *Niemuth v. EPIC Life Ins. Co.*, --- F. Supp. 3d ---, 2022 WL 17359886, at *12 (W.D. Wis. Dec. 1, 2022).

Dr. Geringer's retraction was questionable in that he did not provide any medical rationale or reasoning for his complete reversal of opinion. He simply issued a retraction at Braun's request

9

to "help" her. (¶ 53). There were no new clinical findings that would explain or support Dr. Geringer's change in opinion, and Braun's treatment remained stable. (¶¶ 56-57, 61). *See Niemuth*, 2022 WL 17359886, at *11 (where treating physician failed to explain rationale, it was reasonable for ERISA administrator to "question whether [treating physician] was functioning 'more as an advocate than a doctor rendering objective opinions'") (quoting *Davis*, 444 F.3d at 578); *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, No. 08 C 1093, 2012 WL 1079966, at *10 (N.D. Ill. Mar. 30, 2012) (Administrator cannot "be faulted for discounting the disability determination" by the treating physician "as the information conveyed in [his] own contemporaneous session notes belie the disability determination.").

Pointing out the absence of any clinical basis for Dr. Geringer's change of opinion and the contradictions with the contemporaneous clinical findings is not impermissibly "moving the target." Rather it provides a reasoned explanation for questioning the weight to be afforded to that opinion. *See Seaverson v. Unum Ins. Co. of Am.*, No. 20-cv-486-wmc, 2021 WL 5083444, at *10 (W.D. Wis. Nov. 2, 2021) (administrator "provided a reasoned explanation for rejecting" treating physician opinion and thus was not arbitrary or capricious). *See also Black & Decker*, 538 U.S. at 832 ("[A] treating physician, in a close case, may favor a finding of 'disabled.'"); *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) (Treating physician "may bend over backwards to assist a patient in obtaining benefits.") (quotation marks omitted).

In its discretionary weighing of the evidence, Unum Life reasonably attributed more weight to the contemporaneous clinical exam findings and the medically detailed analyses by Dr. Norris and Nurse Yeaton, than to the mercurial opinion of Dr. Geringer and the conclusions of Drs. DeForest and Geringer that lacked medical rationale and conflicted with the contemporaneous normal clinical findings. *See Fischer v. Liberty Life Assur. Co. of Boston*, 576 F.3d 369, 377

(7th Cir. 2009) ("[I]t was not an abuse of discretion for Liberty to reject Fischer's evidence in favor of contrary and, at least in Liberty's view, more compelling evidence.").

The totality of the evidence provides a rational and reasoned basis for Unum Life's determination that Braun failed to satisfy her burden to establish that she was unable to perform the material and substantial duties of her occupation as a legal secretary.

### B. Braun fails to establish that Unum Life's determination lacks rational support.

Braun, without engaging with the substance of Dr. Norris's medical rationale delineated in his reports, launches ad hominem attacks against him and proclaims that Dr. Norris can never be believed, irrespective of the medical facts. (Pl. Resp. pgs. 6-10).

Dr. Norris is a well-qualified medical doctor who provided medically detailed reasoning for his professional opinions specific to the facts of Braun's case. (¶¶ 43-49, 56-58, 61). Dr. Norris is triple board certified in family medicine, occupational medicine, and aerospace medicine. (¶ 72). He has never been disciplined by any medical licensing board. (¶ 72). He served over 20 years in the United States Air Force. (¶ 75). His board certifications and work for the Air Force involved fitness for duty and return to work capacity evaluations. (¶¶ 73-75). *See Abi-Aad v. Unum Group, et al.*, No. 21-CV-11862-AK, 2023 WL 2838357, at *14 (D. Mass. Apr. 7, 2023) (Dr. Norris's board certification in family medicine "concerns a broad range of experience and training"); *Dragus v. Reliance Standard Life Ins. Co.*, No. 15 C 9135, 2017 WL 1163870, at *10 (N.D. Ill. Mar. 29, 2017), *aff'd*, 882 F.3d 667 (7th Cir. 2018) ("[O]ccupational medicine focuses on the health of workers, including the ability to perform work.") (quotation marks omitted).

Dr. Norris has more than 30 years of experience and training in assessing functional ability to work. (¶¶ 73-76). Braun derides Dr. Norris's "*modus operandi*" of regularly considering certain factors in evaluating a claimant's functional capabilities, namely clinical examination findings,

11

objective imaging and diagnostic tests, the nature and extent of medical treatment, and reported activities. (Pl. Resp. pgs. 6-7). Yet she fails to explain why these factors are *not* appropriate to consider, when they plainly reflect her medical condition and functionality. That Dr. Norris, in formulating his opinions, systematically considered Braun's clinical findings, medical tests, medical treatment, and activity level is not nefarious or a reason to doubt his detailed assessment. To the contrary, it evidences his methodical analysis of the evidence. *See Seaverson*, 2021 WL 5083444, at *10 ("Having failed to articulate where the medical resource fell short in explaining its review, the court cannot manufacture one for plaintiff.").

Braun persists in her false unsupported accusations that Dr. Norris is financially rewarded for skewing opinions to be adverse to a claimant. (Pl. Resp. pgs. 9-10). To the contrary, Dr. Norris's compensation is not based on the outcome of claim decisions or dependent on the substance of his medical opinions. He receives no financial incentives to fabricate opinions. (¶¶ 78-80). Unum Life has never instructed him to manufacture opinions adverse to a claimant. (¶ 76). Dr. Norris's role is to evaluate the totality of the evidence and provide a professional medical opinion on "the merits of the claim itself," which is what he did in Braun's case. (¶¶ 76-77). *See Mote*, 502 F.3d at 608 ("[M]ost insurers are well diversified, so that the decision in any one case has no perceptible effect on the bottom line.") (quotation marks omitted).

Braun contends that Dr. Norris must be biased because other courts have disagreed with his medical opinions in other unrelated cases. (Pl. Resp. pgs. 6-7). The Seventh Circuit rejected this distorted "batting average" theory of bias in *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 767-68 (7th Cir. 2010). The plaintiff in *Holmstrom*, like Braun, argued that "a string of federal decisions reversing [the insurer's] administrative denials [is] evidence that [the insurer's] inherent conflict of interest dominates and corrupts its claims determinations." *Id*. The Seventh

Circuit flatly rejected that false proposition, holding the Supreme Court "did not invite a 'batting average' approach, assessing conflict by comparing the number of benefits decisions affirmed and reversed in federal court." *Id*. at 768. "It is not surprising that some of [the insurer's] claim decisions have led to litigation and that it has lost some of those cases." "But whether [the insurer's] cases were won or lost, abuse of discretion is a fact-specific inquiry." *Id*. The court is "concerned only with [the claimant's] claim and the context and circumstances of [the insurer's] denial as demonstrated by the administrative record in this case." *Id*.

The same holds true for judicial review of Dr. Norris's medical opinions in Braun's case. The propriety of a physician's medical opinions is not determined according to the law of averages, but by the specific medical facts for each insured. "The batting average approach is no more useful for establishing the bias of consulting physicians, for it is possible that [the physician] has consulted in hundreds of cases where her opinions were not and could not fairly have been challenged." *Garvey*, 2012 WL 1079966, at *9. *See also Holmstrom*, 615 F.3d at 768 (the "sampling problems with [the batting average] approach would be daunting").

Moreover, numerous courts have found Dr. Norris's medical opinions reliable and persuasive, including courts applying ERISA *de novo* review. *See, e.g., Ovist v. Unum Life Ins. Co. of Am.*, 14 F.4th 106, 115-16, 121-22 (2d Cir. 2021); *Abi-Aad*, 2023 WL 2838357, at *14; *Luna v. Unum Life Ins. Co. of Am.*, No. 20-202 JCH-JHR, 2021 WL 4307294, at *13-14 (D.N.M. Sept. 22, 2021); *McCook v. Unum Life Ins. Co. of Am.*, 463 F. Supp. 3d 729, 736, 742 (E.D. La. 2020). *See also Desharnais v. Unum Life Ins. Co. of Am.*, No. 5:19-cv-06599-EJD, 2021 WL 4481861, at *3 (N.D. Cal. Sept. 30, 2021) (benefits paid based on medical review by Dr. Norris).

Braun's related insinuation that Unum Life must take "corrective action" to require Dr. Norris to tailor his medical opinions based on how judges, with no medical training, critiqued his

medical opinions in prior unrelated cases, is absurd. (Pl. Resp. pgs. 9-10). Unum Life relies on Dr. Norris to apply his neutral, professional, medical expertise. There is no logical basis for Braun's demand that Dr. Norris vary his professional medical judgment in response to medically untrained judicial critique. *See Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 408 (7th Cir. 2004) ("By granting discretion to [the insurer], this plan puts decisions in the hands of medical specialists (which federal judges and juries assuredly are not)."); *Arenson*, 2023 WL 184233, at *6 ("Whether that explanation was medically correct is beyond the scope of the Court's review; the Court cannot choose between conflicting expert opinions to evaluate the evidence.").

Braun also attacks Nurse Yeaton as unqualified because she is not a medical doctor and purportedly lacks training "related to Braun's disabling diagnoses," citing *Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 995 (N.D. Ill. 2003). (Pl. Resp. pgs. 10-11). But the ERISA "regulation simply requires that a plan engage a 'health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment'" and "there is no requirement that the individual must be a doctor." *Seaverson*, 2021 WL 5083444, at *11 (quoting 29 C.F.R. §2560.503-1(h)(3)(iii)). *See Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 663 (6th Cir. 2013) ("Judge's argument that MetLife acted arbitrarily and capriciously in referring his file to a nurse for review, rather than to a physician, is meritless.").

The same "diagnosis" argument premised on *Crespo* was rejected by the district court in *Dragus*, because the issue in *Crespo* was a dispute over diagnosis, not functionality. Unlike *Crespo*, "the 'medical judgment' on which Reliance's denial of benefits rested was whether or not, given the extensive medical records provided by Dragus, he was unable to perform in his occupation." *Dragus*, 2017 WL 1163870, at *10. Similarly in Braun's case, the "medical judgment" involves her functionality, not her diagnosis.

14

Braun maligns the expert vocational assessment that her occupational duties as a legal secretary "would allow for changes in position for brief periods of time throughout the day." (¶ 19) (Pl. Resp. pgs. 11-12). Yet Braun failed to present any contrary vocational evidence. Again, the Plan requires Braun to provide proof of her claim. (¶ 6). Unum Life is not obligated to *disprove* her claim. Nothing in Clark Hill's job description or the vocational analysis required that Braun's clerical duties be performed from only a seated position. (¶¶ 11, 12, 18, 19). Nor is that logical given the nature of the duties and the professional law firm environment in which they are performed. It is not arbitrary for Unum Life to conclude that Braun's clerical duties can be performed from a variety of positions, particularly in the absence of any contrary evidence.

Braun denigrates Unum Life's offer of an IME as an "11th hour" "last resort" offered only "in the abstract" with "no concrete plans." (Pl. Resp. pg. 15). The IME was discussed with Braun's attorney to address concerns Braun raised at the end of the administrative appeal, specifically, any medical disagreement or perceived bias in the claim administration, as well as to provide her further opportunity to substantiate her claim. (¶¶ 64-66). Because Braun rejected participation in an IME, no "concrete plans" were put in place. Braun, by suggesting then refusing an IME, was plainly looking to manufacture an issue that she can condemn in court as "bias" and "ignoring" her complaints, rather than making a sincere attempt to cooperatively work through a solution to her purported concerns. Her intention to create a no-win catch-22 scenario is laid bare by her refusal of the IME coupled with a declaration that "we doubt whether Unum would provide Ms. Braun with a full and fair review via a medical examination." (¶ 66).

## CONCLUSION

The record rationally supports Unum Life's reasonable determination to deny Braun's claim for payment of Plan benefits, warranting entry of judgment for Unum Life.

Respectfully submitted,

Jacqueline J. Herring (IL-6282246)  By: */s/ Jacqueline J. Herring*
HINSHAW & CULBERTSON LLP  Attorney for Defendant,
151 North Franklin Street Suite 2500  Unum Life Insurance Company of America
Chicago, Illinois 60606
P  312.704.3975 | F  312.704.3001
JHerring@hinshawlaw.com

# CERTIFICATE OF SERVICE

I certify that on June 2, 2023, I electronically filed the foregoing with the Clerk of the above Court using the CM/ECF system, which will send notification of such filing on the following attorneys:

Matthew T. Maloney
Mark D. DeBofsky
DeBofsky Law, Ltd.
150 N. Wacker Dr., Suite 1925
Chicago, Illinois 60606
mmaloney@debofsky.com
mdebofsky@debofsky.com

/s/ Jacqueline J. Herring
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
P. 312.704.3975 | F. 312.704.3001
jherring@hinshawlaw.com
Ill. Bar No. 6282246

83539\313728032.v1